**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-02748-RBJ

WILDEARTH GUARDIANS,

          Plaintiff,

    v.

 GINA McCARTHY,
 in her official capacity as
ADMINISTRATOR of the
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

          Defendant,

    and

STATE OF OKLAHOMA,
OKLAHOMA DEPARTMENT OF ENVIRONMENTAL QUALITY, and
STATE OF WYOMING,

          Defendant-Intervenors.

---

**JOINT MOTION FOR ENTRY OF
CONSENT DECREE**

---

**INTRODUCTION**

       Plaintiff WildEarth Guardians ("Plaintiff" or "Guardians") and Defendant Gina

McCarthy, in her official capacity as Administrator of the United States Environmental

Protection Agency ("Defendant" or "EPA") (the "Parties"), jointly move the Court to enter

the Consent Decree, attached hereto as Attachment A.  In its notice of lodging the proposed

Consent Decree (August 25, 2014, Dkt. 48), EPA explained that the Parties could not move

for entry of the proposed Consent Decree until the public participation process required by

Section 113(g) of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7413(g), was completed.

Notice of the availability of the lodged Consent Decree for public comment was published

in the Federal Register, 79 Fed. Reg. 55,477 (Sept. 16, 2014), and no comments were

received.  Defendant-Intervenors, State of Oklahoma, Oklahoma Department of

Environmental Quality, and State of Wyoming have authorized us to state that they do not

object to the relief requested herein.

 As no adverse substantive comments were received on the proposed Consent

Decree, EPA and the Department of Justice have elected not to withhold or withdraw

consent to entry of the Consent Decree submitted here.  Accordingly, the Court should

enter the proposed Consent Decree.

## BACKGROUND

**A.** **Statutory Background**

 This action was brought by Plaintiff WildEarth Guardians, an environmental

advocacy organization, alleging that EPA's Administrator failed to perform a

nondiscretionary duty when she did not timely make a finding under the Act that the States

of Colorado, Idaho, New Mexico, Oklahoma, Oregon, South Dakota, Utah, Washington,

Wyoming, Alaska, and Hawaii had not submitted "state implementation plan" ("SIP")

revisions addressing the 2010 1-hour $NO_2$ "national primary ambient air quality standards" ("NAAQS") within three years after the $NO_2$ NAAQS was promulgated.

NAAQS are "ambient air quality standards the attainment and maintenance of which in the judgment of the Administrator . . . are requisite to protect the public health." 42 U.S.C. § 7409(b)(1). Nitrogen dioxide, $NO_2$, is among the "criteria" pollutants for which NAAQS are established. *Id.*, § 7409(c). EPA previously promulgated an "annual" primary NAAQS for $NO_2$. In February 2010, EPA published a final rule establishing a 1-hour primary NAAQS for $NO_2$, effective as of April 12, 2010, which would supplement the existing annual standard. 75 Fed. Reg. 6474 (Feb. 9, 2010). The rule was signed by the Administrator on January 22, 2010. *Id.*, at 6531.

The Act requires that within three years after EPA promulgates a new or revised primary NAAQS, each State must submit a SIP revision to EPA for approval "which provides for implementation, maintenance, and enforcement of such primary standard" in each air quality region within the State. 42 U.S.C. § 7410(a)(1).

The required elements of such SIP revisions are set forth in 42 U.S.C. § 7410(a)(2)(A) – (M). A SIP revision must include enforceable emission limitations and other control methods (§ 7410(a)(2)(A)); appropriate monitoring (§ 7410(a)(2)(B)); enforcement programs, including permitting (§ 7410(a)(2)(C)); limitations on interstate transport of pollutants (§ 7410(a)(2)(D)); assurances of adequate State authority to regulate air quality (§ 7410(a)(2)(E)); monitoring of emissions from stationary sources (§ 7410(a)(2)(F)); authority to exercise emergency powers (§ 7410(a)(2)(G)); provisions

providing for revision of SIPs (§ 7410(a)(2)(H)); meeting consultation, public notification, and prevention of significant deterioration requirements (§ 7410(a)(2)(J)); provisions for air quality modeling (§7410(a)(2)(K); provisions establishing permitting fees (§ 7410(a)(2)(L)); and provisions ensuring consultation and participation by local entities (§ 7410(a)(2)(M)).[1]  This type of SIP submission is known as an "infrastructure SIP."

42 U.S.C. § 7410(a)(2)(D)(i)(I) requires that SIPs also include provisions "(i) prohibiting . . . any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will – (I) contribute significantly to nonattainment in, or interfere with maintenance by, any other State" with regard to the particular NAAQS.  This is generally known as the "good neighbor" provision, since it prohibits emissions in a State that will interfere with NAAQS compliance in another State.  In order to implement this provision, in August 2011 EPA promulgated the "Cross-State Air Pollution Rule" ("CSAPR"), which defined emissions limitations requirements for "upwind" States based on those States' contributions to downwind States' air quality problems.  The EPA emissions limitations were primarily focused on nitrogen oxides ("$NO_X$") and sulfur dioxide ("$SO_2$") emitted from power plants, and were implemented through federal implementation plans ("FIPs").  A FIP is the equivalent of a SIP, but is issued by EPA rather than by a State.  The Court of Appeals for the District of Columbia Circuit struck down the CSAPR rule in 2013, *EME Homer Generation, L.P. v. EPA*, 696 F.3d 7, 12 (D.C. Cir. 2012).  On April 29, 2014, the Supreme Court reversed and remanded the D.C. Circuit's opinion, holding that CSAPR was a

---

[1]  42 U.S.C. § 7410(a)(2)(I) relates to areas that are not in attainment for the particular NAAQS, and are subject to separate deadlines under the Act.

permissible exercise of EPA's authority. *EPA v. EME Homer City Generation, L.P.*, 134 S.Ct. 1584, 1608-10 (2014). Litigation on remand is ongoing in the D.C. Circuit because the Supreme Court's decision did not resolve all of the claimed deficiencies of CSAPR.

EPA is required to determine whether the minimum SIP criteria set forth in 42 U.S.C. § 7410(a)(2) have been met by a State within six months after the date by which a State is required to have submitted a particular SIP or SIP revision. 42 U.S.C. § 7410(k)(1)(B). Here, the date for EPA making a finding of completion or lack thereof was the date by which States were required to submit 1-hour $NO_2$ NAAQS SIP revisions, *i.e.,* January 22, 2013, plus six months, or July 22, 2013.

The Clean Air Act's citizens' suit provision authorizes "any person" to commence a civil action against the Administrator "where there is alleged a failure of the Administrator to perform any act or duty . . . which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). The district courts are granted jurisdiction to decide such claims and may order performance of the act or duty in question. *Id.*, § 7604(a). The plaintiff must give the Administrator notice of its intent to sue to enforce a nondiscretionary duty at least 60 days before the suit is actually filed. *Id.*, § 7604(b)(2). In a final order in any case brought under 42 U.S.C. § 7604(a) (including this case), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." *Id.*, § 7604(d).

**B.**     **Factual Background**

Pursuant to 42 U.S.C. § 7604(a)(2), by letters dated August 1, 2013, and November 11, 2013, Plaintiff Guardians gave notice to the Administrator of its intent to file a citizens' suit alleging that the Administrator had not met a nondiscretionary duty to make a finding by July 22, 2013, that the States of Alaska, Colorado, Hawaii, Idaho, New Mexico, Oklahoma, Oregon, South Dakota, Utah, Washington, and Wyoming  had failed to submit a required SIP revision regarding the 1-hour primary $NO_2$  NAAQS.

Plaintiff Guardians filed its initial complaint on October 9, 2013.  The complaint, based on the August 1, 2013, notice of intent to sue, alleged that Colorado, Idaho, New Mexico, Oklahoma, Oregon, South Dakota, Washington, and Wyoming had not timely submitted their required 2010 $NO_2$ NAAQS SIP revisions and that the Administrator had not made a required finding of non-compliance by July 22, 2013, pursuant to 42 U.S.C. § 7410(k)(1)(B).  An amended complaint, based upon allegations in the November 11, 2013, notice of intent to sue, was deemed filed as of January 24, 2014.  It added similar allegations as to Alaska and Hawaii.  Plaintiff alleged that Colorado, Idaho, and Utah had failed to submit $NO_2$ SIPS including the 42 U.S.C. § 7410(a)(2)(D)(i)(I) good neighbor provisions, and that the other States had failed to submit SIPs addressing any of the 42 U.S.C. § 7410(a)(2)(A)-(M) requirements.

The State of Oklahoma and the Oklahoma Department of Environmental Quality, and the State of Wyoming, were granted leave to intervene by the Court on February 11 and 26, 2014, respectively.   Plaintiff Guardians filed a motion for summary judgment on February

21, and Defendant-Intervenor State of Wyoming filed a motion to dismiss (based upon its allegation that Wyoming had already submitted an $NO_2$ NAAQS SIP revision) on February 25. EPA answered the amended complaint on February 28, 2014. On August 4, 2014, in light of the impending settlement reported by the parties, the Court denied the pending motion for summary judgment and motion to dismiss as moot.

As of the date of this motion, all States listed by Plaintiff except Alaska have submitted 2010 $NO_2$ SIP revisions.[2] Pursuant to 42 U.S.C. § 7413(g), EPA published a notice of availability of the proposed Consent Decree for public comment on September 16, 2014. 79 Fed. Reg. 55,477. No comments were received.

**C.     The Proposed Consent Decree**

EPA agrees, on or before November 15, 2014, to sign for publication in the Federal Register "a finding of failure to submit all or portions of the SIP revisions required under CAA Sections 110(a)(2)(A), (B), (C), (D), (E), (F), (G), (H), (J), (K), (L), and (M), with regard to the 2010 $NO_2$ NAAQS" for States listed in the complaint which have not made such submissions (*i.e.*, Alaska). Decree, ¶ 5.

Because of the current uncertainty regarding the good neighbor provisions after the Supreme Court's decision in *EME Homer*, the parties also agree that "this Consent Decree does not address any claim by Guardians that States are required to submit SIPs relating to the 2010 1-hour $NO_2$ NAAQS that include provisions relating to 42 U.S.C. §

_____

[2] The State of Washington submitted its SIP revision on September 22, 2014, after the date the proposed Consent Decree was lodged.

7410(a)(2)(D)(i)(I)." Decree, ¶ 5. EPA agrees to forward the finding of failure to submit to the Office of the Federal Register within ten business days after the finding is signed. *Id.*

The deadline set forth in Paragraph 5 may be extended by written stipulation between Guardians and EPA filed with the Court; if they cannot agree on an extension or any other modification of the Decree, either Party may file a motion to amend the Decree. ¶ 6. Dispute resolution provisions are included at Paragraph 13. No motion to enforce the Decree or for contempt may be filed by a Party unless it has complied with the dispute resolution provisions of Paragraph 15.

The Decree settles Plaintiff Guardians' claims for attorneys' fees and costs pursuant to 42 U.S.C. § 7604(d). EPA agrees to pay $10,405 in attorneys' fees and $400 in costs, for a total of $10,905, to Guardians as "full settlement of all claims for attorneys' fees, costs, and expenses incurred in this litigation through the date of lodging of this Consent Decree . . . ." Decree, ¶ 8. Guardians reserves the right to make claims for additional litigation costs for additional work after lodging of the Decree, including relating to any deadline extensions sought by EPA or for enforcement of the Decree in the future. *Id.* EPA reserves all defenses for any future claim and it is stated that the amount or rate of fees will have not have precedential value in any future fee claim. *Id.*

## ARGUMENT

### A.  Standard of Review

"The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984),

*quoting Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *accord, Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984). Courts generally accord substantial deference to settlements because "[t]he inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." *Am. Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977), *quoting Tulsa City Lines v. Mains*, 107 F.2d 377, 380 (10th Cir. 1939). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Nuclear Pharmacy, Inc.*, 741 F.2d at 324. In reviewing a consent decree, a district court must determine whether the proposed settlement fairly and reasonably resolves the controversy in a manner consistent with the public interest and the applicable law. *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986).

**B.**    **The Terms of the Proposed Consent Decree are Fair, Reasonable, Adequate, and in the Public Interest**

The terms of the Consent Decree were extensively negotiated at arm's length by the Parties. Counsel for the Parties are experienced in litigating Clean Air Act citizens' suit claims such as those set forth in the amended complaint. The ultimate terms of the Consent Decree are the product of numerous offers and proposals back and forth and EPA's explanation of its resource constraints and competing statutory priorities. The attorneys' fees and costs settlement was based on contemporaneous time records presented by Plaintiff and EPA's investigation into appropriate attorneys' fee rates in the Denver area.

The deadline set forth in the proposed Consent Decree takes account of the statutory mandates of the Clean Air Act, but also recognizes the resource constraints and competing statutory priorities with which EPA must contend. The Consent Decree includes provisions for modification of the deadline where appropriate. The agreement memorialized in the Consent Decree attached hereto is therefore reasonable.

The terms of the Consent Decree submitted with this Joint Motion are adequate in that they resolve claims made by Plaintiff in the amended complaint, settle Plaintiff's claim for litigation costs pursuant to 42 U.S.C. § 7604(d), and provide for a mechanism by which the Parties may adjust the deadline in the event that currently unknown contingencies occur or circumstances change.

The Consent Decree also serves the purposes of the Clean Air Act and the public interest because it provides a reasonable schedule for EPA's mandated action by a date certain. The Consent Decree terms provide certainty and avoid additional expenditure of judicial resources and the time and cost to the Parties. The public was given notice of the version of the Consent Decree lodged with the Court pursuant to 42 U.S.C. § 7413(g), and no comments were received.

The Parties therefore jointly conclude that the settlement set forth in the Consent Decree is fair, reasonable, in the public interest, and consistent with the Clean Air Act, and should therefore be entered by the Court. Defendant-Intervenors State of Oklahoma, Oklahoma Department of Environmental Quality, and State of Wyoming have authorized us to state that they do not object to entry of the Consent Decree.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Parties' joint motion for entry of the Consent Decree and enter the Consent Decree.

Respectfully submitted,

COUNSEL FOR PLAINTIFF:

Dated: November 12, 2014

*/s/ Roberta Traverso-Estes*
CO Bar. No. 43906
3356 Stuart St
Denver, CO 80212
(503) 453-3360
Rtraversoestes@gmail.com

*/s/ Samantha Ruscavage-Barz*
NM Bar. No. 23276
WildEarth Guardians
516 Alto Street
Santa Fe, NM 87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org

COUNSEL FOR DEFENDANT EPA:

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division

Dated: November 12, 2014      By:     */s/ Daniel Pinkston*
DANIEL PINKSTON
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, CO  80202
(303) 844-1804
daniel.pinkston@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing JOINT MOTION FOR ENTRY OF CONSENT DECREE as served on all counsel of record through the Court's ECF system on this 12th day of November, 2014.

*/s/ Daniel Pinkston*

# ATTACHMENT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-02748-RBJ

WILDEARTH GUARDIANS,

       Plaintiff,

v.

GINA McCARTHY, in her official capacity as Administrator
of the United States Environmental Protection Agency,

       Defendant.

---

## CONSENT DECREE

---

This Consent Decree ("Consent Decree") is entered into by Plaintiff WildEarth Guardians

("Guardians") and by Defendant Gina McCarthy, in her official capacity as Administrator of the

United States Environmental Protection Agency ("EPA").

<u>RECITALS</u>

A.  Plaintiff Guardians filed its Complaint in this matter on October 8, 2013.  In the

Complaint, brought as a citizens' suit under the Clean Air Act, 42 U.S.C. § 7604, Plaintiff alleged

that Defendant EPA failed to perform nondiscretionary duties to make findings that the States of

Colorado, Idaho, New Mexico, Oklahoma, Oregon, South Dakota, Utah, Washington, and

Wyoming had failed to submit required "State Implementation Plans" ("SIPs") regarding the

"National Ambient Air Quality Standard" ("NAAQS") adopted by EPA for 1-hour $NO_2$ in 2010.

75 Fed. Reg. 6474 (Feb. 9, 2010).

B.  On January 24, 2014, Plaintiff filed its "Amended Complaint for Declaratory and Injunctive Relief" ("Amended Complaint").  The Amended Complaint added the States of Alaska and Hawaii to the list of States that had not timely submitted $NO_2$ NAAQS SIPs. In its prayer for relief, Plaintiff sought (i) a declaratory judgment that Defendant EPA failed to perform a nondiscretionary duty to make findings that the States listed above had not timely submitted SIPs regarding the 1-hour $NO_2$ NAAQS issued by EPA in 2010; (ii) an order requiring EPA to make such findings by a date certain; (iii) Plaintiff's reasonable costs of litigation pursuant to 42 U.S.C. § 7604(d); and (iv) a determination that the Court will retain jurisdiction over this matter to ensure compliance with the Court's orders.

C.  The State of Oklahoma, the Oklahoma Department of Environmental Quality, and the State of Wyoming moved to intervene, and their intervention was granted by the Court on February 11, 2014, and February 26, 2014, respectively.

D.  Intervenor State of Wyoming submitted a 1-hour $NO_2$ NAAQS SIP to EPA for approval on January 24, 2014, and Intervenor State of Oklahoma submitted a 1-hour $NO_2$ NAAQS SIP to EPA for approval on March 10, 2014.  In addition, New Mexico submitted a 1-hour $NO_2$ NAAQS SIP to EPA for approval on March 27, 2014; Idaho made such a SIP submission to EPA on September 16, 2013; Oregon on December 27, 2013; South Dakota on October 29, 2013; Utah on December 12, 2012; Colorado on March 7, 2013; and Hawaii made such a submission on April 4, 2014.

E.  As of the date of lodging of this Consent Decree with the Court, EPA has not yet made a finding of failure to submit for any State regarding infrastructure SIPs for the 2010 1-hour $NO_2$ NAAQS.

F.  Guardians and EPA have agreed to settlement of this case without any admission of

any issue of fact or law, which settlement they consider to be a just, fair, adequate, and equitable resolution of the claims raised in this action.

G.  It is in the interest of the public, the parties, and judicial economy to resolve the issues in this action without protracted litigation.

H.  The Court, by entering this Consent Decree, finds that this Consent Decree is fair, reasonable, in the public interest, and consistent with the Clean Air Act, 42 U.S.C. §§ 7401 *et seq*.

## AGREEMENT AND ORDER

NOW, THEREFORE, before the taking of testimony, without trial or determination of any issue of fact or law, and upon the consent of the parties, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1.  The Court has subject matter jurisdiction over the claims set forth in the Amended Complaint and to order the relief contained in this Consent Decree.

2.  Venue is proper in the United States District Court for the District of Colorado.

3.  Guardians and EPA shall not challenge the terms of this Consent Decree or the Court's jurisdiction to enter and enforce this Consent Decree. This Consent Decree constitutes a complete and final resolution of all claims that have been asserted or that could have been asserted in the Amended Complaint regarding any alleged EPA failure to perform a nondiscretionary duty to make findings that a State has failed to submit a 1-hour $NO_2$ NAAQS SIP, except as set forth in the second clause of the first sentence of Paragraph 5 below.

4.  This Consent Decree will become effective upon the date of its entry by the Court. If for any reason the Court does not enter the Consent Decree, the obligations set forth in this Decree are null and void.

5.  On or before November 15, 2014, EPA shall sign for publication in the Federal Register a finding of failure to submit all or portions of the SIP revisions required under CAA Sections 110(a)(2)(A), (B), (C), (D), (E), (F), (G), (H), (I), (J), (K), (L), and (M) with regard to the 2010 NO$_2$ NAAQS with regard to the States of Alaska and Washington;  however, in light of the decision by the United States Supreme Court in *Environmental Protection Agency v. EME Homer City Generation, L.P.*, 134 S.Ct. 1584 (2014),  the parties agree that this Consent Decree does not address any claim by Guardians that States are required to submit SIPs relating to the 2010 1-hour NO$_2$ NAAQS that include provisions relating to 42 U.S.C. § 7410(a)(2)(D)(i)(I). Within ten business days following signature of the finding, EPA will send the notice to the Federal Register for review and publication.

6.  The deadline in Paragraph 5 may be extended by written stipulation executed by counsel for EPA and Guardians and filed with the Court.  Any other extension of the deadline in Paragraph 5 or modification of this Consent Decree may be approved by the Court upon motion and pursuant to the Federal Rules of Civil Procedure by any party to the Consent Decree and upon consideration of any response by the non-moving party to the Consent Decree and reply by the moving party.

7.  If a lapse in appropriations occurs within 60 days prior to the deadline set forth in Paragraph 5, that deadline shall be extended automatically one day for each day of the lapse in appropriations.  Nothing in this Paragraph shall preclude EPA from seeking an additional extension, either by stipulation or Court order, pursuant to the procedures of Paragraph 6.

8.  The parties agree that the State of Wyoming submitted the required infrastructure SIP on January 24, 2014, and therefore EPA shall not include Wyoming in any finding of failure to submit required by Paragraph 5 of this Consent Decree. The parties agree that the State of

Oklahoma submitted the required infrastructure SIP provisions on March 10, 2014, and therefore

EPA shall not include Oklahoma in the finding of failure to submit required by Paragraph 5 of

this Consent Decree.

9.   The United States agrees to pay Guardians as full settlement of all claims for

attorneys' fees, costs, and expenses incurred in this litigation through the date of lodging this

Consent Decree, under any authority, the sum of $10,905.00, as soon as reasonably practicable

following entry of this Consent Decree, by electronic funds transfer to a bank account identified

by Guardians. Guardians agrees to accept $10,905.00 in full satisfaction of any and all claims for

costs and attorneys' fees with respect to this case, except that Guardians reserves the right to seek

fees pursuant to 42 U.S.C. § 7604(d) for any additional work performed after the lodging of this

Consent Decree, including attorneys' fees for any extensions of the deadline set forth in

Paragraph 5 requested by EPA and costs and attorneys' fees for enforcement of the Consent

Decree in the future. Nothing in this Paragraph shall be construed as an admission or concession

by EPA that Guardians is entitled to or eligible for recovery of any costs or attorneys' fees, and

EPA reserves all defenses with respect to any future fee claim. The amount of attorneys' fees or

rates under this Paragraph shall have no precedential value in any future fee claim.

10.   The Court shall retain jurisdiction to determine and effectuate compliance with this

Consent Decree and to resolve any disputes in accordance with Paragraph 14 of this Consent

Decree.  Once EPA has taken the actions called for in Paragraphs 5 and 8 of this Consent Decree,

this Decree shall be terminated and the case dismissed with prejudice, except that the portion of

Plaintiff's claim related to EPA's failure to make a finding of failure to submit with regards to

section 110(a)(2)(D)(i)(I) of the CAA shall be dismissed without prejudice.  The Parties may

either jointly notify the Court that the Decree should be terminated and the case dismissed, or

EPA may so notify the Court by motion.  If EPA notifies the Court by motion, then Guardians shall have twenty (20) days in which to respond.

11.  Except as provided herein, nothing in this Consent Decree shall be construed to limit or modify any discretion accorded EPA by the CAA or by general principles of administrative law in taking the actions which are the subject of this Consent Decree, including the discretion to alter, amend, or revise any responses or final actions contemplated by this Consent Decree. EPA's obligation to perform the actions specified by Paragraph 5 by the time specified therein does not constitute a limitation or modification of EPA's discretion within the meaning of this Paragraph.

12.  The parties agree and acknowledge that final approval and entry of this proposed Consent Decree are subject to the requirements of 42 U.S.C. § 7413(g).  That subsection provides that notice of this proposed Decree be given to the public and that the public shall have a reasonable opportunity to comment. EPA will promptly deliver a public notice of this Consent Decree to the Federal Register for publication and public comment after lodging this Consent Decree with the Court. After this Consent Decree has undergone an opportunity for notice and comment, EPA's Administrator and the Attorney General shall promptly consider any such written comments in determining whether to withdraw or withhold consent to this Consent Decree, in accordance with 42 U.S.C. § 7413(g). If the Administrator or the Attorney General elects not to withdraw or withhold consent to this Consent Decree, the Parties shall promptly file a motion that requests the Court to enter this Consent Decree.  If the Administrator or Attorney General elects to withdraw or withhold consent to this Consent Decree pursuant to 42 U.S.C. § 7413(g), EPA shall promptly advise Plaintiff.

13.  Nothing in the terms of this Consent Decree shall be construed to waive any

remedies Guardians may have under CAA § 307(b)(1), 42 U.S.C. § 7607(b)(1), with respect to any future challenges to the final action called for in Paragraph 5, and nothing in this Consent Decree shall be construed to create any such remedy.

14.  Nothing in this Consent Decree shall be construed to provide the Court with jurisdiction over any challenges by Guardians, or any other person or entity not a party to this litigation, with respect to the final action called for in Paragraph 5.

15.  In the event of a dispute between the parties concerning the interpretation or implementation of any aspect of this Consent Decree, the disputing Party shall provide the other Party with a written notice outlining the nature of the dispute and requesting the other party to confer and attempt to reach an agreement on the disputed issue.  If the Parties cannot reach an agreed-upon resolution, then either Party may move the Court to resolve the dispute. No motion or other proceeding seeking to enforce this Consent Decree or for contempt of court shall be filed unless the Party seeking to enforce this Consent Decree has followed the procedure set forth in this Paragraph.

16.  It is hereby expressly understood and agreed that this Consent Decree was drafted by Guardians and EPA jointly, and that any and all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Consent Decree.  This Consent Decree shall be governed and construed under the laws of the United States.

17. The obligations imposed upon EPA under this Consent Decree may only be undertaken using appropriated funds.  No provision of this Decree shall be interpreted as, or constitute a commitment or requirement that, EPA will obligate funds in contravention of the Anti-deficiency Act, 31 U.S.C. § 1341, or any other applicable law or regulation.

18.  The undersigned representative of each Party certifies that she or he is fully authorized to consent to the Court's entry of the terms and conditions of this Consent Decree.

19.  Any written notice or other written communication between the parties contemplated under this Consent Decree shall be sent to the undersigned counsel at the email addresses listed in the signature blocks below unless written notice of a change in counsel and/or address is provided.

SO ORDERED this ___ day of _____ 2014.

BY THE COURT:

_____
United States District Judge

FOR PLAINTIFF:

Dated: August 25, 2014

*/s/ Roberta Traverso-Estes*
Roberta Traverso-Estes
3356 Stuart St
Denver, Colorado 80212
Tel: (503) 453-3360
RTraversoEstes@gmail.com

FOR DEFENDANT:

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Resources Division

Dated: August 25, 2014        By:    */s/ Daniel Pinkston*
DANIEL PINKSTON
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Tel: (303) 844-1804
Daniel.Pinkston@usdoj.gov